1

2

3

4              UNITED STATES DISTRICT COURT

5            NORTHERN DISTRICT OF CALIFORNIA

6

7   ETHAN GWIN,                          Case No. 12-05995 JCS

              Plaintiff,
8
                                         **ORDER GRANTING IN PART AND**
9       v.                               **DENYING IN PART DEFENDANT'S**
                                         **MOTION FOR JUDGMENT ON THE**
10  TARGET CORPORATION,                  **PLEADINGS**

              Defendant.                 Re: Docket No. 20
11

12

## I.   INTRODUCTION

Plaintiff Ethan Gwin brings this action against Defendant Target Corporation ("Target") asserting that Target terminated him in violation of California Labor Code §§ 132a and 98.6 and the public policy of the State of California.  Gwin filed his initial and first amended complaints in Contra Costa Superior Court and Defendant removed the action to the Federal District Court for the Northern District of California on the grounds of diversity jurisdiction.  The action was assigned to the undersigned magistrate judge.  The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).  Target now brings a Motion for Judgment on the Pleadings to Plaintiff's First Amended Complaint ("the Motion") seeking dismissal with prejudice of all of Plaintiff's claims pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  A hearing on the Motion was held on Friday, August 23, 2013 at 9:30 a.m.  The parties filed supplemental briefs on August 30, 2013.  For the reasons stated below, the Motion is GRANTED in part and DENIED in part.

## II.   BACKGROUND

### A.   The First Amended Complaint

In his First Amended Complaint ("FAC"), Gwin alleges that he was employed by Target as

United States District Court
Northern District of California

a Senior Protection Specialist in 2009.  FAC ¶ 10.  According to Gwin, he worked "diligently and professionally, and had no issues with or violations of any of Target Corporations' rules."  *Id*. ¶ 11.  Gwin alleges he had "the highest arrest rate" and that he received two evaluations from his supervisor, Christine Bliss, which indicated that he either met or exceeded performance expectations.  *Id*.

Gwin alleges that on January 12, 2010, he suffered a dislocated shoulder while attempting to arrest a thief who had stolen merchandise from the store.  *Id*. ¶ 12.  As a result of his injury, Gwin was required to go to the hospital for treatment.  Gwin alleges that after he received this injury, he filed a "First Report of a work related injury (Workers' Compensation)" and that he was subjected to harassment by being "placed in an isolated area of the store where he was required to guard a back door for a number of days."  *Id*.  According to Gwin, "[i]t was well known that this assignment was an assignment to punish loss prevention employees with whom management was displeased."  *Id*.  Gwin further alleges that the store manager was "starting to watch his movements on a regular basis and was scrutinizing his arrest reports more vigorously than in the past."  *Id*.  Gwin alleges that this scrutiny was not directed toward his coworkers.  *Id*.  According to Gwin, his injury caused him to lose three days of work and required physical therapy and follow-up appointments with doctors for several weeks, which was "frowned upon by Target management."  *Id*.

Gwin alleges that on January 4, 2011, he was bitten on the hand while attempting to arrest a person who was stealing merchandise and had exited the store.  *Id*. ¶ 13.  The individual who bit Gwin was arrested and charged with theft and assault.  *Id*.  Gwin reported the event and the work-related injury in writing, as required under "Target's rules and the Labor Law."  *Id*.  Gwin again received medical treatment for his injury and filed a first report of industrial injury.  *Id*.  Gwin alleges that "[s]hortly thereafter, he was assigned fixed duty at the front door where he was not allowed to move or go to the bathroom without first seeking permission and he was not allowed to sit."  *Id*.  Gwin alleges this treatment was "humiliating," that no other loss prevention employee "was required to remain on that post for an entire day with no relief," and that this was "not an assignment that was given to senior protection specialists."  *Id*.  Gwin further alleges that he was

"chastised and reprimanded by management for leaving his post to use the restroom or even stretch his legs after hours of standing in one position." *Id*.

Gwin alleges that in May of 2011, he confronted a suspect who had stolen items from the store. *Id*. ¶ 14. Gwin alleges that although he recovered the stolen property and carried out a citizen's arrest, consistent with store policy, he was given a verbal reprimand by his supervisor, Christine Bliss, "allegedly . . . on her manager's behalf and direction." *Id*. Gwin alleges "Ms. Bliss told Gwin he should have avoided getting injured and that he should not have pursued the suspect or completed the arrest." *Id*.

Gwin alleges that in August 2011, he was told by another loss prevention specialist that a woman in the store had placed a number of items in her bag. *Id*. ¶ 15. Gwin moved closer to "visually surveil" the suspect and she began to move toward the front of the store, "yelling loudly at him." *Id*. According to Gwin, he told the woman she would have to leave the store and that if she had "any issues she could speak to his manager." *Id*. Gwin alleges the woman continued to yell obscenities at him and left the store, throwing the stolen merchandise on the ground. *Id*. Gwin further alleges that he was subsequently reprimanded by store manager, Don Helin, for failing to arrest the individual, even though Ms. Bliss had previous instructed him that he should not make arrests under such circumstances. *Id*. ¶ 16. Gwin alleges that he explained the circumstances of the case to Mr. Helin, including his understanding that the woman had only a few bottles of baby formula in her bag and that he had not witnessed her stealing these items himself, as is required by Target rules in order for a loss prevention specialist to conduct an arrest. *Id*. Nonetheless, Mr. Helin told Gwin that he expected loss prevention specialists to make arrests even if the value of the merchandise was minimal, which Gwin alleges was contrary to Target policy. *Id*.

Gwin alleges that he was subsequently informed by a representative of Target's Human Resources department that he had violated Target's policies in his handling of the August 2011 incident. *Id*. ¶ 17. Gwin further alleges that the information provided by Mr. Helin about the incident was false and that Gwin was not given an opportunity to rebut the false allegations against him. *Id*. Gwin alleges that he was then told that his initial incident report and Mr. Helin's

United States District Court
Northern District of California

3

report were being sent to Target's legal department for "a final decision." *Id*. ¶ 18. At this point, Gwin alleges, he became aware that Mr. Helin was attempting to have him terminated. *Id*. Gwin alleges, on information and belief, that Mr. Helin's conduct was "in retaliation for Gwin's reports of work-related injuries and his medical accommodation and use of the workers' compensation process." *Id*.

Gwin alleges that on September 8, 2011,Target terminated him on the basis that he had violated Target's rules and procedures. *Id*. ¶ 19. Gwin alleges that when he was asked "what specific policies he had violated, they were not able to tell him." *Id*. According to Gwin, he was told he had improperly detained a suspected thief at the door and that he was ignored when he pointed out that there was video footage of the incident showing that he had not detained the suspect. *Id*. Gwin further alleges he was falsely accused of "telling the female subject that he accused her of stealing." *Id*. Gwin alleges he was told that he should have gotten a manager involved, even though the suspect "never requested to speak to the manager and even though he offered that option to her and she left the store of her own accord while yelling obscenities at Plaintiff." *Id*.

Gwin alleges Mr. Helin's allegations about him were made "as a pretext to justify . . . Gwin's unlawful termination in retaliation for Plaintiff's reports of work-related injuries." *Id*. ¶ 20. Gwin further alleges that:

> [b]ecause . . .the adverse employment actions that were directed against Plaintiff Gwin only began after his first and second work-related injuries, Plaintiff Gwin is informed and believes and thereupon alleges that he was targeted and singled out for termination because he had been injured in the course and scope of his employment on two separate occasions while performing his duties and that this injury record and workers' compensation claim reports that were forwarded to Target's Worker Compensation insurance company apparently reflected badly on store management because of Defendants' policies to prevent work-related injuries and workers' compensation claims and also impacted his supervisors' and managers' bonuses and evaluations.

*Id*. ¶ 21.

On the basis of these factual allegations, Gwin asserts three wrongful termination claims in his FAC: 1) wrongful termination in violation of California Labor Code § 132a; 2) wrongful

United States District Court
Northern District of California

4

termination in violation of California Labor Code § 98.6; and 3) wrongful termination in violation

of the public policy of the State of California.

**B.     The Motion**

In the Motion, Target seeks judgment on the pleadings on all three of Plaintiff's claims under

Rule 12(c) of the Federal Rules of Civil Procedure.

First, Target contends Plaintiff's allegations are insufficient as to his wrongful termination

claim under California Labor Code § 132a because: 1) the claim is preempted by California's

Workers' Compensation Act; and 2) Gwin's termination is "far too temporally attenuated from his

filing his Workers' Compensation claims to establish the two events are causally related as a

matter of law."  Motion at 6-7.  In support of its preemption argument, Target points to Cal. Labor

Code § 132a(4), which it contends "vests exclusive jurisdiction to adjudicate all claims for alleged

violations of Section 132a with . . . California's Workers' Compensation Appeals Board."  *Id.* at 7

(citing *Dutra v. Mercy Medical Center*, 209 Cal. App. 4th 750, 754 (2012)).   In support of its

second argument, that Gwin's termination is too temporally attenuated from his Workers'

Compensation claims, Target cites cases it contends require that the challenged action must occur

"close on the heels of the protected activity."  *Id.* at 8 (citing *Ray v. Henderson*, 217 F.3d 1234,

1244 (9th Cir. 2000)).  According to Target, where there is a gap of more than three months

between the protected activity and the adverse employment action, the two are not causally

connected as a matter of law.  *Id.* (citing *Manatt v. Bank of America, N.A.*, 339 F.3d 792, 802 (9th

Cir. 2003);  *Tungjunyatham v. Johanns*, 2009 U.S. Dist. LEXIS 105937, at * 50-53 (E.D. Cal.

Nov. 13, 2009 );  *Beagle v. Rite Aid Corp*., 2009 U.S. Dist. LEXIS 87073, at *32 (N.D. Cal. Sept.

23, 2009); *Richmond v. ENEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997); *Hughes v. Derwinski*,

967 F.2d 1168, 1174-1175 (7th Cir. 2001)).

Second, Target asserts Gwin's wrongful termination claim under Cal. Labor Code § 98.6

fails as a matter of law because: 1) Gwin has not alleged that he exhausted his administrative

remedies as to that claim; and 2) he has not alleged he engaged in any activity that is protected

under § 98.6.  *Id.* at 9.  With respect to the exhaustion argument, Target asserts that Cal. Labor

Code § 98.7 prescribes an administrative remedy for anyone discharged or discriminated against in

United States District Court
Northern District of California

violation of any law under the jurisdiction of California's Labor Commissioner and that Cal. Labor Code § 98.6 falls within the jurisdiction of the Labor Commissioner. *Id.* (citing Cal. Labor Code §§ 21, 79, 98.6). Further, under California law, where an administrative remedy is provided by statute, the administrative procedure must be exhausted before a civil action may be brought in court, Target contends. *Id.* (citing *Campbell v. Regents of the Univ. of* California, 35 Cal. 4th 311, 321 (2005)). Therefore, Target asserts, a civil action for violation of § 98.6 is subject to section 98.7's pre-filing administrative remedies requirement. *Id.* (citing *Creighton v. City of Livingston*, 628 F. Supp. 2d 1199, 1220 (E.D. Cal. 2009)).

Target also challenges Gwin's claim under § 98.6 on the ground that it covers only "conduct delineated in this chapter," which Target contends refers only to "conduct relating to the filing, prosecuting or assisting in the prosecution of a complaint filed with California's Division of Labor Standards Enforcement. *Id.* at 11 (citing Cal. Labor Code §§ 79-107). Therefore, according to Target, this provision prohibits an employer from discriminating against an employee for:

> 1) making any complaint to or instituting any proceedings before California's Division of Labor Standards Enforcement; 2) disclosing any information to a government or law enforcement agency where the employee has reasonable cause to believe the information discloses a violation of a state or federal statute; 3) instituting any action or proceeding pursuant to California's Private Attorneys General Act; or 4) participating in any Labor Commissioner or Private Attorneys General Act proceeding.

*Id.* (citing Cal. Labor Code §§ 98.6, 1102.5). According to Target, Gwin does not allege any facts that would establish, if proved, that Target retaliated against him for engaging in any activity that is protected under § 98.6. *Id.* Moreover, to the extent Gwin asserts his § 98.6 claim based on Target's alleged violation of § 132a, Target asserts, the claim fails because Gwin's § 132a claim is preempted by California's Workers' Compensation Act and because Plaintiff's termination is too temporally attenuated from the protected activity, as discussed above. *Id.*

Finally, Target asserts Gwin's wrongful termination claim based on violation of California public policy fails as a matter of law because Gwin cannot establish a violation of either Cal. Labor Code § 132a or § 98.6 for the reasons discussed above and these are the only two statutory violations upon which this claim is predicated. *Id.* at 12.

United States District Court
Northern District of California

### C.    Opposition

Gwin contends the allegations in his FAC are sufficient to state a claim as to all of his claims.  Opposition at 1.

Gwin rejects Target's assertion that his claim under § 132a fails because it may only be brought before the Workers' Compensation Appeals Board.  *Id.* at 6.  Gwin argues that § 132a does not contain an "exclusivity provision" and that the question of whether a workers' compensation remedy is exclusive depends on the general exclusivity provisions of the workers' compensation law.  *Id.* at 6 (citing *City of Moorpark v. Superior Court*, 18 Cal. 4th 1143, 1154 (1988)).  Further, Gwin asserts, these provisions expressly do *not* apply to section 132a.  *Id.* at 6-7 (citing *City of Moorpark*, 18 Cal. 4th at 1154-1155).  Nor has Target cited any case that holds that a claim under § 132a may only be filed before the Workers' Compensation Appeals Board, Gwin contends.  *Id.* at 7.  Gwin further contends Target's reliance on *Dutra* is misplaced because that case involved a common law tort claim  for wrongful termination in violation of public policy based on the public policy declared in Labor Code § 132a, not a statutory claim for violation of § 132a.  *Id.*  (citing *Dutra v. Mercy Medical Center*, 209 Cal. App. 4th 750 (2012)).  In any event, Gwin argues, the holding in *Dutra* is contrary to the California Supreme Court's decision in *City of Moorpark*, in which it stated that "section 132a does not provide the exclusive remedy and does not preclude an employee from pursuing FEHA and common law wrongful discharge remedies."  *Id.* (citing *City of Moorpark*, 18 Cal. 4th at 1158).

Gwin further contends he has alleged sufficient facts to state a claim under § 132a, rejecting Target's assertion that there is no causal connection between the protected activity and the adverse employment action due to the time period that elapsed between Gwin's Workers' Compensation claims and his termination.  *Id.* at 8.  According to Gwin, Target's argument completely ignores his allegations showing that he was subjected to a systematic and continuous retaliatory course of conduct following his injuries, which are sufficient to support an inference that Plaintiff's ultimate termination was in retaliation for his earlier injuries.  *Id.* (citing *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1054-1055 (2005);  *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1060 (8th Cir. 1997)).  Gwin contends the cases cited by Target do not involve a systematic course of conduct and

therefore are distinguishable. *Id*. at 9. Gwin further asserts that the cases cited by Target are federal cases involving Title VII claims for retaliation and therefore do not reflect state law, which must be applied in this diversity case to determine whether Gwin states valid claims. *Id*. Should the court find that Gwin's allegations are insufficient, however, Gwin asks the Court to grant leave to amend to include additional factual allegations. *Id*.

Gwin also rejects Target's assertion that his § 98.6 claim fails as a matter of law. *Id*. at 9-12. First, he argues that he has alleged that Target engaged in conduct within the scope of § 98.6 by alleging that Target discriminated against him and treated him differently than other loss prevention specialists because he exercised his right to file complaints of his work-related injuries, which are under the jurisdiction of the Labor Commissioner. *Id*. at 9-10. According to Gwin, these allegations establish violations of § 98.6 to the extent it prohibits discrimination on the part of an employer: 1) "because the employee or applicant for employment has filed a bona fide complaint or claim or instituted or caused to be instituted any proceeding under or relating to his rights, which are under the jurisdiction of the Labor Commissioner"; and 2) "because of the exercise by the employee . . . of any rights afforded him or her." *Id*. at 10. Thus, Gwin asserts, Target's argument that the alleged conduct does not fall within the conduct proscribed by § 98.6 is inconsistent with the plain language of that provision. *Id*. Further, Gwin contends, to the extent the § 98.6 claim is based on the alleged violation of § 132a, the claim is not preempted by the Workers' Compensation Law and his termination is not too temporally attenuated from the alleged protected activity for the reasons discussed above. *Id*.

Gwin contends Target is also incorrect with respect to its assertion that his § 98.6 claim fails because he did not allege that he exhausted available administrative remedies. *Id*. at 11-12. Gwin asserts Target's reliance on the Eastern District of California's ruling in *Creighton v. City of Livingston*, 28 F.Supp. 2d 1199, 1220 (E.D. Cal. 2009) fails because the court subsequently reconsidered its decision and reversed itself, holding that "[e]xhaustion of administrative remedies before filing suit for statutory violations of the Labor Code is *not* required under California law." *Id*. at 11 (quoting 2009 U.S. Dist. LEXIS 93720 (Oct. 7, 2009) (emphasis added in Gwin Opposition brief)). According to Gwin, in the subsequent *Creighton* ruling, the court explained

that it had relied on federal district court decisions that had followed the California Supreme Court's ruling in *Campbell v. Regents of Univ. of California*, 35 Cal. 4th 311 (2005), but that *Campbell* held only that exhaustion of internal administrative remedies was required and did not address whether exhaustion of administrative remedies before the Labor Commissioner was required. *Id.*

Gwin also cites three decision from this district it contends are "in accord" with the later *Creighton* decision. *Id.* (citing *Ortiz v. Permanente Medical Group, Inc.*, 2013 U.S. Dist. LEXIS 58243, at *14-16 (N.D. Cal. April 23, 2013) (Illston, J.); *Turner v. City and County of San Francisco,* 892 F.Supp.2d 1188, 1202-1204 (N.D. Cal. 2012) (Chen, J.); *Thompson v. Genon Energy Services, LLC*, 2013 U.S. Dist. LEXIS 34319, at *7-10 (N.D. Cal. March 12, 2013) (Henderson, J.)).

Finally, Gwin points to a California Court of Appeal case, *Lloyd v. County of Los Angeles*, 172 Cal. App. 4th 320 (2009), that he contends is directly on point and holds, based on the permissive language in § 98.7, that exhaustion of remedies to the Labor Commissioner is not required. *Id.* at 11-12. According to Gwin, the *Lloyd* court also relies on other California cases that have held that there is no exhaustion requirement, namely, *Daly v. Exxon Corp.*, 55 Cal. App. 4th 39, 46 (1997) and *Murray v. Oceanside Unified School Dist.*, 79 Cal. App. 4th 1338, 1339 (2000). *Id.* at 12.

Gwin also argues that he has stated a viable claim for wrongful termination in violation of California public policy. *Id.* at 12-15. First, he asserts that to the extent this claim is based on his statutory claims under California Labor Code §§ 132a and 98.6, this claim is sufficiently alleged for the same reasons his claims under those provisions are sufficient. *Id.* at 12-13. Second, he contends even if the Court were to find that it did not have jurisdiction over those claims, his claim for wrongful termination in violation of public policy would still survive. *Id.* at 13. As to a tort claim based on the policy expressed in § 132a, Gwin asserts that there is no exhaustion requirement under the California Supreme Court's decision in *City of Moorpark* and that the *Dutra* case was wrongly decided, as discussed above. *Id.* at 13-14. Similarly, Gwin contends there is no exhaustion requirement as to his tort claim based on § 98.6 even if there were such a

9

1   requirement as to his statutory claim based on that provision.  *Id*. at 15 (citing *Leibert v.*

2   *Transworld Systems, Inc.*, 32 Cal. App. 4th 1693, 1706 (1995)).  Further, he asserts, he has

3   adequately alleged that Target engaged in conduct that is proscribed by § 98.6 for the reasons

4   discussed above. *Id*.

5   **D.     Reply and Request for Judicial Notice**

6        In its Reply brief, Target reiterates the arguments raised in the Motion.  Target also requests

7   that the Court take judicial notice of Gwin's response to Target's Special Interrogatory No. 1,

8   particularly the following statement that Target contends is an admission:  "Target took the

9   unlawful and retaliatory actions against Plaintiff identified in response to Interrogatory No. 1

10  because he reported his work related injuries as required by law."   Docket No. 25.

**III.   ANALYSIS**

12   **A.     Legal Standard under Rule 12(c)**

13       "After the pleadings are closed – but early enough not to delay trial – a party may move for

14  judgment on the pleadings." Fed. R. Civ. P. 12(c).   In ruling on a motion under Rule 12(c), the

15  Court must accept all factual allegations in the complaint as true and view them in the light most

16  favorable to the non-moving party.  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

17  Judgment on the pleadings is appropriate when there is no issue of material fact in dispute and the

18  moving party is entitled to judgment as a matter of law.  *Hal Roach Studios, Inc. v. Richard Feiner*

19  *and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir.1989).  "Analysis under Rule 12(c) is 'substantially

20  identical' to analysis under Rule 12(b)(6) because, under both rules, 'a court must determine

21  whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'"

22  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir.2012) (quoting *Brooks v. Dunlop Mfg. Inc.*,

23  2011 WL 6140912, at *3 (N.D.Cal. Dec. 9, 2011)).

24   **B.     Request for Judicial Notice**

25       As a preliminary matter, the Court considers Target's request for judicial notice of Gwin's

26  interrogatory response.  Target cites Rule 201 of the Federal Rules of Evidence in support of its

27  request.  Federal Rule of Evidence 201(b)(2) permits the Court to take judicial notice of facts that

28  can be readily and accurately determined.  It is not clear, however, that it applies to a response to a

United States District Court
Northern District of California

10

contention interrogatory, which is merely a party's *theory* of liability. Further, by characterizing Gwin's response as an admission, Target apparently is asking the Court to consider the interrogatory response in lieu of the allegations in Plaintiff's FAC, or at best, in conjunction with the allegations in the FAC. Target has cited no authority that suggests that it is appropriate to interpret the allegations in the complaint with reference to a party's responses to contention interrogatories when deciding whether to grant a motion for judgment on the pleadings under Rule 12(c). Further, the Court finds that such an approach is inconsistent with the requirement under Rule 12(c) that in evaluating the sufficiency of the allegations the Court must draw all reasonable inferences in favor of the party opposing a motion for judgment on the pleadings.

Target's request for judicial notice is DENIED.

**C.    California Labor Code § 132a**

Target contends Gwin's claim for wrongful termination in violation of California Labor Code § 132a fails as a matter of law because the Workers' Compensation Appeals Board is the exclusive forum for claims asserted under this provision. The Court agrees.

Section 132a(1) provides that:

> (1) Any employer who discharges, or threatens to discharge, or in any manner discriminates against any employee because he or she has filed or made known his or her intention to file a claim for compensation with his or her employer or an application for adjudication, or because the employee has received a rating, award, or settlement, is guilty of a misdemeanor and the employee's compensation shall be increased by one-half, but in no event more than ten thousand dollars ($10,000), together with costs and expenses not in excess of two hundred fifty dollars ($250). Any such employee shall also be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer.

Cal. Labor Code § 132a(1). Under Cal. Labor Code § 5300, the Workers' Compensation Appeals Board has exclusive jurisdiction over claims brought under this provision. *See City of Moorpark v. Superior Court*, 18 Cal. 4th 1143, 1156 (1998) (recognizing that § 5300 establishes the Workers' Compensation Appeals Board as the exclusive forum for pursuing a section 132a claim). On this basis, courts have consistently found a lack of subject matter jurisdiction over claims asserted under § 132a. *See, e.g., Jordan v. Potter*, 2008 U.S. Dist. LEXIS 56325, at * 12 (S.D. Cal. July 23, 2008) (dismissing claim asserted under § 132a for lack of subject matter jurisdiction

United States District Court
Northern District of California

on ground that "the exclusive remedy provisions of the Workers' Compensation Act preclude Plaintiff from bringing a federal court action under § 132a"); *Greenly v. Sara Lee Corp*., 2006 WL 3716769 (E.D. Cal., Dec. 15, 2006) (same);  *Miller v. Vicorp Rests., Inc.,* 2005 U.S. Dist. LEXIS 39506, at *18-19 (N.D. Cal. March 18, 2005) (Whyte, J.) ( same); *Leach v. Madera Glass Co*., 31 F. Supp. 2d 1223, 1229 (E.D. Cal. 1998) (same).

Gwin's reliance on *City of Moorpark*, discussed further below, in support of a contrary conclusion is misplaced.   As the court in *Greenly* explained when it rejected the same argument:

> [T]he California Supreme Court in *Moorpark* clarified that for a plaintiff alleging disability discrimination, § 132a was not the exclusive *remedy* – a plaintiff could also look to FEHA or common law principles for relief.  *Moorpark*, 18 Cal.4th at 1158, 77 Cal.Rptr.2d 445, 959 P.2d 752 (holding that for disability discrimination, "section 132a does not provide an exclusive remedy and does not preclude an employee from pursuing FEHA and common law wrongful discharge remedies").   Nonetheless, for claims that *are* brought under § 132a, "the Workers Compensation Appeals Board [is] the exclusive forum . . . ." *Id*. at 1156, 77 Cal.Rptr.2d 445, 959 P.2d 752. Thus, while plaintiff has various alternative means of recovery based on his allegation of disability discrimination, a claim under § 132a is only proper before the WCAB.

2006 WL 3716769, at *9 (emphasis in original).  Accordingly, the Court finds that it lacks subject matter jurisdiction over Plaintiff's wrongful termination claim under § 132a and dismisses that claim with prejudice.

### D.    California Labor Code § 98.6

#### i.    Protected Conduct Under § 98.6

Target contends Plaintiff's claim under Cal. Labor Code § 98.6 fails because he has not alleged that he engaged in any conduct that is protected under that provision.  This issue presents difficult questions that have not been addressed by California courts.   Having considered the supplemental briefing of the parties, as well as the legislative history of Labor Code § 98.6, the Court finds that Gwin has stated a claim under that provision.

Section 98.6(a) provides as follows:

> No person shall discharge an employee or in any manner discriminate against any employee or applicant for employment because the employee or applicant engaged in any conduct

United States District Court
Northern District of California

delineated in this chapter, including the conduct described in subdivision (k) of Section 96, and Chapter 5 (commencing with Section 1101) of Part 3 of Division 2, or because the employee or applicant for employment has filed a bona fide complaint or claim or instituted or caused to be instituted any proceeding under or relating to his or her rights, which are under the jurisdiction of the Labor Commissioner, or because the employee has initiated any action or notice pursuant to Section 2699, or has testified or is about to testify in any such proceeding or because of the exercise by the employee or applicant for employment on behalf of himself, herself, or others of any rights afforded him or her.

Cal. Labor Code § 98.6(a).  In other words, it prohibits discharge of an employee or discrimination by an employer: 1) based on conduct "delineated in this chapter"; 2) because the employee has "filed a bona fide complaint or claim . . . under the jurisdiction of the Labor Commissioner;" or 3) "because of the exercise by the employee . . . of any rights afforded him or her."

Gwin does not contend his claim is based on the first type of conduct; rather he argues that his claim alleges that he was subject to discrimination and discharge based on the second and third types of conduct.  In particular, he argues that he was discriminated against because he filed claims for Workers' Compensation (the second type of conduct) and because he exercised his right to file those claims (the third type of conduct).  The Court rejects Gwin's contention that his filing of Workers' Compensation claims constitutes filing a bona fide complaint or claim under the jurisdiction of the Labor Commissioner.   The Labor Commissioner's jurisdiction is set forth in Cal. Labor Code § 98 and provides that the Labor Commissioner has jurisdiction over "action to recover wages, penalties, and other demands for compensation."  It does not give the Labor Commissioner jurisdiction over Workers' Compensation claims, which are within the exclusive jurisdiction of the Workers' Compensation Appeals Board, as discussed above.  Cal. Labor Code § 5300.  Therefore, Plaintiff's § 98.6 claim fails to the extent it is based on the second type of protected conduct.

A more difficult question is whether Plaintiff has stated a claim based on the third type of conduct, the exercise of "any rights."   While framed in broad language, a California court of appeal that has examined the legislative history has found that the reference to "any rights" covers only conduct protected by the Labor Code.  *Grinzi v. San Diego Hospice Corp.*, 120 Cal. App. 4th 72, 86-88 (2004).   In *Grinzi*, the court looked to the findings and declarations of policy that were

United States District Court
Northern District of California

adopted when the relevant language of § 98.6 was amended, citing in particular the following

passage in the uncodified section of the law:

> The Legislature finds and declares that, absent the protections by the Labor Commissioner, working men and women are ill-equipped and unduly disadvantaged in any effort to assert their individual rights *otherwise protected by the Labor Code*. The Legislature finds it necessary and appropriate to provide employees an inexpensive administrative remedy for the pursuit of their rights *under the Labor Code*. The Legislature further declares that this act is necessary to further the state interest in protecting the rights of individual employees and job applicants who could not otherwise afford to protect themselves.

*Id*. at 87 (quoting Stats.2001, ch. 820, § 1, p. 5201 (italics added in *Grinzi*)).  The highlighted

language, the court found, indicated that the legislature intended to limit the phrase "any rights" to

those "otherwise protected under the Labor Code."  *Id*.  The court found further support for this

conclusion in the fact that the initial portion of § 98.6 proscribes termination based only on certain

types of conduct that are "otherwise protected by the Labor Code."  *Id*.

The *Grinzi* court also pointed to the Legislative Counsel's Digest for § 98.6 in support of

its conclusion, quoting the following passages, which described the scope of the law before 98.6

was amended and after.  *Id*. at 87-88.  As to the former, the Digest states:

> Existing law prohibits an employer from discriminating against any employee because the employee has filed a claim with or instituted a proceeding before the Labor Commissioner relating to the employee's rights, because the employee testifies or will testify in such a proceeding, or because the employee exercised, on behalf of himself, herself, or others, rights afforded employees by the Labor Code. Existing law provides for reinstatement of and the payment of lost wages and work benefits to any employee who is subjected to adverse employment action because the employee filed a bona fide complaint with the Division of Industrial Relations. Existing law makes it a misdemeanor for an employer to take adverse employment action against employees who file bona fide complaints.

*Id*. (quoting Legis. Counsel's Dig., Assem. Bill No. 1015 (2001–2002 Reg. Sess.)).  As to the

amended law, the Digest states:

> This bill would extend [existing] provisions to apply to applicants for employment who are refused employment, not selected for a training program leading to employment, or discriminated against in any other manner. The bill would also expand existing prohibitions to include protection for employees and applicants who engage in conduct delineated in Chapter 4 of Division 1 [Div. of Labor

14

1    Standards Enforcement] and Chapter 5 of Part 3 of Division 2
     [Political Affiliations] of the Labor Code....

2    *Id.* (quoting Legis. Counsel's Dig., Assem. Bill No. 1015 (2001–2002 Reg. Sess.)).

3           At least two decisions by courts in this district have followed *Grinzi* as to the meaning of

4    "any rights" under Cal. Labor Code § 98.6.  In *Hollie v. Concentra Health Services, Inc.*, Judge

5    Hamilton relied on *Grinzi* to hold that an employee's complaints to his supervisor, both verbal and

6    by email, regarding certain overtime pay policies, was not protected activity under § 98.6.  2012

7    WL 993522 (N.D. Cal. March 23, 2012).  On that basis, the court held, on summary judgment,

8    that the plaintiff's claim under § 98.6 that his employer had discriminated against him for

9    exercising  his rights was subject to dismissal.  *Id.*  Similarly, in *Weingand v. Harland Financial*

10   *Solutions, Inc.*, Judge Chen found that complaining to management about a company's overtime

11   pay policy was not protected activity under § 98.6 and dismissed the plaintiff's claim under that

12   provision for failure to state a claim.    2012 WL 3537035, at *5-7 (N.D. Cal. Aug. 14, 2012).  In

13   *Weingand*, the court followed *Grinzi* and *Hollie*, concluding the plaintiff's conduct did not fall

14   under any Labor Code provision.  *Id.* at *7.

15          This Court, like the courts in *Hollie* and *Weingand*, finds the reasoning of *Grinzi* to be

16   persuasive.  Further, the Court has found no California cases that reach a contrary result.

17   Therefore, the Court concludes that the last phrase of § 98.6 is limited to the exercise of any right

18   *under the Labor Code*.  In contrast to *Hollie* and *Weingard*, however, the plaintiff in this case

19   asserts such rights in support of his § 98.6 claim;  in particular, Gwin points to his right to be free

20   from discrimination based on his work-related injuries and filing of Workers' Compensation

21   claims, which is protected under the Labor Code to the extent that § 132a prohibits such

22   discrimination.  Consequently, § 98.6 provides a remedy for the alleged wrongful conduct to the

23   extent Plaintiff alleges Target violated his rights under § 132a.

24          The Court notes that this conclusion is consistent with the California Supreme Court's

25   decision in *City of Moorpark v. Superior Court*, 18 Cal. 4th 1143 (1998), although the court in that

26   case did not reach the precise question that is before the Court in this case.  In *Moorpark*, the

27   plaintiff asserted claims for discrimination based on disability under the California Fair

28   Employment and Housing Act ("FEHA") and wrongful termination under California common

United States District Court
Northern District of California

15

law.  The defendant asserted these claims were barred under Cal. Labor Code § 132a.  The

California Supreme Court rejected this argument, finding that § 132a does not provide an

exclusive remedy for discrimination that falls under that provision.  18 Cal. 4th at 1148.

The *Moorpark* court began its analysis by distinguishing between § 132a and other

workers' compensation remedies, stating as follows:

> . . . [S]ection 132a is quite different from other workers' compensation remedies.  Most workers' compensation remedies compensate an employee for a medical injury. Section 132a, however, addresses a breach of an employee's civil rights and applies regardless of whether that breach causes a medical injury. Because of this distinction, we see no compelling reason to treat section 132a like other workers' compensation remedies.

*Id*. at 1154.  The court went on to explain that "the existence of a workers' compensation remedy

does not by itself establish that the remedy is exclusive.  Rather, the scope of workers'

compensation exclusivity depends on the terms of the exclusive remedy provisions." *Id*.  The

court found that "Section 132a does not itself contain an exclusive remedy clause, and . . . the

general exclusive remedy provisions of the workers' compensation law expressly do not apply to

section 132a." *Id*. (citing Cal. Labor Code §§ 3600, 3602).

The court in *Moorpark* rejected the reasoning in *Portillo v. G. T. Price Products, Inc*., 131

Cal.App.3d 285, 290 (1982), which held that where section 132a applied, it provided an

employee's exclusive remedy.  *Id*. at 1156.  The *Portilla* court relied, in part, on the notion that the

remedy under § 132a was exclusive because it was part of "the 'compensation bargain' underlying

the workers' compensation law, whereby '[t]he Workers' Compensation Act . . . afford[s] workers

quick determination of their claim' but 'limit[s] the employee to . . . a single forum, the Workers'

Compensation Appeals Board.'" *Id*. at 1155 (quoting *Portillo*, 131 Cal.App.3d at 287). The

*Moorpark* court found this reasoning to be incorrect because "certain employer conduct falls

outside the compensation bargain." *Id*.  The court continued, "[t]ermination in violation of section

132a is just as obnoxious to the interests of the state and contrary to public policy and sound

morality as sexual or racial discrimination. . . .[and] [t]herefore, a section 132a violation, like

sexual and racial discrimination, falls outside the compensation bargain, and workers'

compensation is not the exclusive remedy." *Id*. (citations and quotations omitted).  The court went

on to hold that even if Cal. Labor Code § 5300 established that the WCAB was the exclusive

*forum* for claims under § 132a, it did not establish an exclusive remedy (as discussed above).  *Id* at

1156.

The *Moorpark* court also rejected the reasoning of *Portillo* that the remedy under § 132a

must be exclusive because in enacting § 132a the Legislature addressed the "precise wrong" that

was the subject of the plaintiff's common law wrongful discrimination claim.  *Id.* (citing *Portillo*,

131 Cal. App. 3d at 290).  The court explained:

> This argument . . . fails to recognize that the Legislature sometimes
> enacts a new remedy, intending to supplement other remedies.  . .
> When courts enforce a common law remedy despite the existence of
> a statutory remedy, they are not "say[ing] that a different rule for the
> particular facts should have been written by the Legislature." (
> *Portillo*, *supra*, 131 Cal.App.3d at p. 290.) They are simply saying
> that the common law "rule" coexists with the statutory "rule."

*Id*.

Here, the remedy created in § 98.6 allowing a plaintiff to enforce the rights protected under

§ 132a is simply another remedy that is available to claimants.  Like the claims addressed in

*Moorpark*, this remedy may be based on the same alleged wrong as would be a claim asserted

before the WCAB under § 132a.  Because § 132a does not provide an *exclusive* remedy, however,

there is no reason to conclude that the California Legislature intended to exclude such a claim

when it amended § 98.6.

### ii.   Exhaustion of Administrative Remedies

Target contends Plaintiff's wrongful termination claim under § 98.6 of the California

Labor Code also fails, as a matter of law, because Plaintiff is required to exhaust the

administrative remedy provided for in Cal. Labor Code § 98.7 and Plaintiff has alleged no facts

showing that he has done so.  Section 98.7 provides, in part, that "[a]ny person who believes that

he or she has been discharged or otherwise discriminated against in violation of any law under the

jurisdiction of the Labor Commissioner may file a complaint with the division within six months

after the occurrence of the violation."   A violation of § 98.6 is "under the jurisdiction of the Labor

Commissioner" and therefore § 98.7 applies to such a claim.  *See* Cal. Labor Code §§ 21, 79, 98.6.

The question, then, is whether California law *requires* that a claim be filed with the Labor

United States District Court
Northern District of California

1  Commissioner before a Plaintiff may bring an action under § 98.6 in court.  The Court concludes

2  that it does not.

3  The California Supreme Court has not addressed the specific question of whether a

4  plaintiff seeking to pursue a claim in court for violation of § 98.6 must first file a claim with the

5  Labor Commissioner under § 98.7, but in *Campbell v. Regents of the Univ. of Cal.*, the California

6  Supreme Court announced a general rule that under California law, "where an administrative

7  remedy is provided by statute, relief must be sought from the administrative body and this remedy

8  exhausted before the courts will act."  35 Cal. 4th 311, 321 (2005).  Based on *Campbell*, numerous

9  federal district courts have held that because § 98.7 creates an administrative remedy, that remedy

10  must be exhausted before a court can consider a claim within the Labor Commissioner's

11  jurisdiction, including a claim under § 98.6.  *See, e.g., Oyarzo v. Tuolumne Fire Dist.*, 2013 WL

12  3327882 (E.D. Cal., July 01, 2013);  *Ferretti v. Pfizer*, 855 F. Supp. 2d 1017 (N.D. Cal. 2012);

13  *Hanford Executive Management Employee Ass'n v. City of Hanford*, 2012 WL 603222 (E.D. Cal.,

14  February 23, 2012);  *Neveu v. City of Fresno*, 392 F. Supp. 2d 1159 (E.D. Cal. 2005).   Target has

15  cited no decisions by California *state* courts that have reached this conclusion, however.  Nor has

16  the Court found any such cases.

17  Further, several federal district courts have reached the opposite conclusion, following a

18  decision by the California Court of Appeal, *Lloyd v. County of Los Angeles*, 172 Cal. App. 4th 320

19  (2009).  *See Ortiz v. Permanente Medical Group, Inc.*, 2013 WL 1748049 (N.D. Cal. April 23,

20  2013) (Illston, J.); *Thompson v. Genon Energy Services,* LLC, 2013 WL 968224, at *3-4 (N.D.

21  Cal. March 12, 2013) (Henderson, J.);  *Turner v. City and County of San Francisco*, 892 F.Supp.

22  2d 1188, 1200-1205 (N.D. Cal. 2012) (Chen, J.); *Creighton v. City of Livingston,* 2009 WL

23  3246825 (E.D. Cal. Oct. 7, 2009) ("*Creighton II*").[1]   The *Lloyd* court held that a claim need not be

24

25  [1] In the Motion, Target cites a prior decision in the same case in which Judge Wanger dismissed a
   claim under California Labor Code § 98.6 on the basis that the plaintiff failed to allege that he had
26  exhausted his administrative remedies by filing a claim with the Labor Commissioner under §
   98.7. 628 F.Supp.2d 1199, 12-19-1221 (E.D. Cal. 2009) (*"Creighton I"*).  Target failed to
27  disclose in its Motion, however, the fact that Judge Wanger subsequently reconsidered the
   question of whether exhaustion is required in order to pursue a claim under § 98.6 and reached a
28  contrary conclusion.  Indeed, although Gwin cited *Creighton II* in his Opposition brief, as well as
   a number of decisions in which federal district courts have followed *Creighton II*, Target failed to

United States District Court
Northern District of California

1   filed with the Labor Commissioner prior to asserting a claim under § 98.6 in court, pointing to the

2   permissive language of § 98.7, as well as cases decided prior to *Campbell* in which California

3   courts had held there was no such exhaustion requirement.  172 Cal. App. 4th at 331-332 (citing

4   *Daly v. Exxon Corp*., 55 Cal. App. 4th 39, 46 (1997); *Murray v. Oceanside Unified Sch. Dist.*, 79

5   Cal. App. 4th 1338, 1359 (2000)).  It further found that requiring a plaintiff to seek relief from the

6   Labor Commissioner before filing suit for a labor code violation "flies in the face of the Labor

7   Code Private Attorneys General Act of 2004," which was "adopted to augment the enforcement

8   abilities of the Labor Commissioner" by allowing aggrieved employees to bring actions to enforce

9   the Labor Code as private attorneys general.  *Id*. at 332.

10       In *Creighton II*, Judge Wanger concluded that *Lloyd,* rather than the federal district court

11   cases that reached a contrary result, provided the best indication of applicable California law. 2009

12   WL 3246825 at * 12.  In reaching this conclusion, Judge Wanger pointed to the pre-*Campbell*

13   cases that did not require exhaustion before the Labor Commissioner under § 98.7 (including those

14   cited by the *Lloyd* court).  *Id*. at 10-11.  He further found that *Campbell* did not change applicable

15   California law because "[b]y its terms, *Campbell* only held that exhaustion of *internal*

16   administrative remedies is required; there is no discussion in *Campbell* of exhaustion of

17   administrative remedies before the Labor Commissioner."  *Id*. at *12.  Finally, he noted that "[n]o

18   California decision requires as a prerequisite to suit for statutory violation of the Labor Code

19   exhaustion of administrative remedies before the Labor Commissioner."  *Id*.

20       In *Turner*, Judge Chen reached the same conclusion, adopting the reasoning and holding

21   of *Creighton II* in a thoughtful decision in which he provided a detailed review of the cases going

22   both directions on this issue.  892 F. Supp. 2d at 1202;  *see also*, *Ortiz,* 2013 WL 1748049, at *5

23   ("The Court finds that the permissive language of section 98.7, coupled with the reasoning in the

24   decisions in *Lloyd*, *Creighton*, *Turner* and *Thompson*, warrants a conclusion that exhaustion of

25   administrative remedies to the Labor Commissioner is not required under section 98.7").

26

27   ─────────────────────────────

28   offer any meaningful response to Gwin's reliance on this line of authority, stating only that "[t]o
the extent Plaintiff relies on any authority to the contrary, it is simply an incorrect interpretation of
California law."  Reply at 7.

Finally, the undersigned has already decided this question, in *Dowell v. Contra Costa County*, 2013 WL 785533 (N.D. Cal. March 1, 2013).  In that case, the Court held that California law does not require exhaustion of the administrative procedure under § 98.7 in order bring a statutory claim under Labor Code § 1102.5 (also a claim that is under the jurisdiction of the Labor Commissioner), finding that the reasoning of *Lloyd*, *Creighton II*, *Turner* is persuasive.  Similarly, and for the reasons articulated in that case, the Court concludes that Plaintiff in this case was not required to file a claim for violation of Cal. Labor Code § 98.6 with the Labor Commissioner before asserting such a claim in this action.

### iii.      Time Period between Injuries and Termination

Target also argues that Plaintiff's wrongful termination claim should be dismissed because the time that elapsed between his filing of Workers' Compensation claims for his injuries and his termination is too long to infer causation.  Target cites a series of cases, all decided on summary judgment, which address the question of whether the timing of an adverse action, by itself, can give rise to an inference of causation sufficient to survive summary judgment.  *See, e.g., Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000) (holding on summary judgment that causation could be inferred based on the fact that adverse employment action occurred "close on the heels of the protected activity");  *Manatt v. Bank of America, N.A.*, 339 F.3d 792, 802 (9th Cir. 2003) (holding on summary judgment that where there was no direct or circumstantial evidence of causation, timing of adverse action by itself  also could not support inference of causation because over nine months had passed  between protected conduct and allegedly retaliatory action; also finding a lack of causation because in the intervening period  the plaintiff had been given a pay raise and a prestigious assignment); *Tungjunyatham v. Johanns*, 2009 U.S. Dist. LEXIS 105937, at * 50-53 (E.D. Cal. Nov. 13, 2009 ) (holding on summary judgment that where the plaintiff did "not have any direct evidence of a causal connection between her EEO complaint" and the allegedly retaliatory act  she could not establish causation based on timing alone where over three months had passed, and noting that while "it is accepted that mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action is sufficient to establish a prima facie case of causality, the cases uniformly hold that the temporal proximity must

United States District Court
Northern District of California

be very close").   All of these cases recognize, however, that the timing of an adverse employment action is only one of many ways a plaintiff can establish causation.

Plaintiff's FAC alleges facts which indicate that he may be able to establish causation on grounds other than the timing of his termination.  For example, he alleges that in May 2011, his supervisor expressly reprimanded him for having suffered injuries in the course of prior arrests. FAC ¶ 14.   That allegation suggests Gwin may be able to establish causation by direct evidence. Plaintiff also alleges that immediately after he reported his injury of January 12, 2010, he was assigned an undesirable post by a back door that was known by Loss Prevention Specialists to be a punishment.  FAC  ¶ 12.   Assuming this allegation to be true, the timing of what Gwin contends was a punishment did follow "on the heels" of Gwin's injury and therefore also could support an inference of causation.   In short, at this early stage of the case the Court cannot conclude that Plaintiff will be unable to establish causation on his claim under § 98.6 in light of the allegations in his complaint.  Rather, this is a question that is better addressed at the summary judgment stage of the case.

Accordingly, the Court DENIES Target's Motion as to Plaintiff's wrongful termination claim under § 98.6.

**E.      Termination in Violation of Public Policy**

Target seeks dismissal of Plaintiff's claim for wrongful termination in violation of public policy on the ground that he cannot establish violations of either Cal. Labor Code § 132a or Cal. Labor Code § 98.6.  The Court disagrees.

In *Tameny v. Atlantic Richfield Co.*, the California Supreme Court held that "when an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action."  27 Cal. 3d 167, 170 (1980).  To determine whether a particular policy can support a common law discharge claim, courts consider whether the policy is: "1) delineated in either constitutional or statutory provisions; 2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; 3) well established at the time of the discharge; and 4) substantial and fundamental." *City of Moorpark*, 18 Cal. 4th at 1159 (quoting *Stevenson v. Superior Court*, 16 Cal.4th 880, 894 (1997)).

Here, Plaintiff points to the policy articulated in Labor Code § 98.6 and 132a, both of which protect employees from retaliation, harassment and discharge as a result of exercising their rights with respect to work-related injuries.[2]   Although this policy meets the requirements of *Stevenson,* see *City of Moorpark,* 18 Cal. 4th at 1159-1161, a California Court of Appeal has held that § 132a may not provide the basis for a *Tameny* claim.  *Dutra*, 209 Cal. App. 4th at 925-926.  *Dutra* relied on *City of Moorpark*, which noted that "when the constitutional provision or statute articulating a public policy also includes certain substantive limitations in scope or remedy, these limitations also circumscribe the common law wrongful discharge cause of action."  *Id*. at 756 (quoting *City of Moorpark*, 18 Cal. 4th at 1159).  Because a § 132a claim may be brought only before the WCAB, the *Dutra* court reasoned, a *Tameny* claim based on the policy articulated in that provision is subject to the same limitation.  *Id*.  As discussed above, however, the Court finds that the WCAB is *not* the exclusive forum for a § 98.6 claim based on the alleged violation of rights protected under § 132a.  Consequently, a *Tameny* claim based on the policy of § 98.6 also is not limited to that forum.  Therefore, the Court concludes that Gwin has stated a claim for wrongful termination in violation of public policy based on Cal. Labor Code § 98.6 and does not reach the question of whether the holding of *Dutra* is correct.

For the reasons stated above, the Court GRANTS in part and DENIES in part Target's Motion.  In particular, the Court GRANTS Target's request for judgment on the pleadings on Plaintiff's statutory claim for violation of Cal. Labor Code § 132a.  The Court DENEIS the Motion as to Plaintiff's remaining claims.

IT IS SO ORDERED.

Dated: September 27, 2013

_____
JOSEPH C. SPERO
United States Magistrate Judge

---

[2] Cal. Labor Code § 132a begins by articulating the following policy:  "It is the declared policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment."